HEATHER E. WILLIAMS, SBN 122664
Federal Defender
HOOTAN BAIGMOHAMMADI, SBN 279105
Assistant Federal Defender
Designated Counsel for Service
801 I Street, Third Floor
Sacramento, CA 95814
T: (916) 498-5700
F: (916) 498-5710

Attorneys for Defendant
Mr. Martin

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:21CR228-JLT BAM |
| Plaintiff, | **MR. MARTIN'S SENTENCING MEMORANDUM** |
| vs. | |
| BENJAMIN JOHN MARTIN, | Date: November 25, 2024 |
| Defendant. | Time: 9:00 a.m. |
| | Judge: Hon. Jennifer L. Thurston |

## I.

## INTRODUCTION

Mr. Martin respectfully requests a sentence of 18 months of custody. He has overcome significant obstacles in life in order to contribute positively to society. He does not pose the same threat to society that other § 922 defendants regularly pose. The collateral consequences that he has suffered – a social death punctuated by loss of friends, family, and profession since his September 2021 arrest – have been significant. He has over three years of exemplary conduct while on bond. For all these reasons, a significantly below Guidelines sentence is sufficient but not greater than necessary to effectuate the purposes of §3553.

//

//

//

## II.

## MR. MARTIN IS A MAN OF UNCONDITIONAL LOVE, FAMILY, COMMUNITY, FAITH, AND PERSERVERENCE.

Mr. Martin was born with physical and mental challenges that led to severe bullying. He was diagnosed with ADHD, had a form of dysgraphia,[1] and was legally blind. Exhibit A, *Character Letters*[2] at 20; *see also* PSR 55. He had challenges with reading something and then reproducing it in written form. Exh. A at 20. There was concern that he would never be able to finish reading a book. *Id*. A child psychologist diagnosed Mr. Martin with "minimal brain dysfunction." *Id*. at 14. He was held back in the second grade and did not attend the sixth grade at all. PSR 55. He was briefly medicated for the ADHD but that was discontinued because it caused him to become even more hyper. *See* PSR 69; *see also* Exh. A at 14, 20 (medication was not helpful). He was placed on the bus for kids with learning disorders; teachers physically and emotionally abused him (including a teacher who slammed his head against a metal pole), and he was ridiculed by his classmates. PSR 55; Exh. A at 20, 28; *see also* Exh. A at 2 ("school was not a particularly safe place for Benjamin").

Mr. Martin was raised in poverty. His parents cleaned homes when they arrived in Fresno. Exh. A at 17. His mother competed with his Aunt Kelly to see who could make the most meals out of one chicken for their families – the record being Mr. Martin's mother making four meals feeding a family of six for four nights. *Id*. His family picked fruits and vegetables at the local produce farms. *Id*. His Aunt Kelly writes how both her and Mr. Martin's families

---

[1] Dysgraphia is a neurological condition that impairs an individual's writing abilities, affecting both the physical act of writing and the ability to express thoughts in written form. It is considered a specific learning disorder in written expression and can manifest through difficulties with handwriting, spelling, and organizing written language. Dysgraphia can be developmental, appearing as children learn to write, or acquired due to brain trauma. It is not related to a person's intelligence level and can be managed with appropriate interventions and strategies. https://www.healthline.com/health/what-is-dysgraphia (accessed November 18, 2024).

[2] Twenty character letters are attached. Mr. Martin is fortunate to enjoy significant love and support. In case the Court is unable to read all the letters, he has done his best to distill the main themes of the letters in this section of his Memorandum. He also places the letters he believes are more relevant and impactful at the front of Exhibit A.
  Many of the letters are addressed to Judge Contreras of the District of Columbia ("DDC"). He presides over Mr. Martin's case there. The character letters were requested after Mr. Martin's conviction in Washington D.C. but before his conviction here. Mr. Martin did not wish to impose a further burden on his letters writers by requesting two sets of letters, one for each case. Most of the content is equally relevant to both Mr. Martin's EDCA and DDC cases.

experienced "very hard times financially." *Id*.; *see also id*. at 28 (making ends meet a struggle; family was impoverished).

Mr. Martin was molested by three different perpetrators as a child. His babysitter sexually abused him. 1:21cr562-RC,[3] ECF no. 107 (PSR) at 22 (Mr. Martin's father and Ms. Gray reported this to probation). A guitar teacher molested Mr. Martin for two to three years. PSR 56. Mr. Martin blamed himself for what happened. *Id*. He dealt with shame, embarrassment, resentment, and anger for decades. *Id*. Finally, Ms. Gray reported that a third individual sexually abused Mr. Martin but she could not recall their name. 1:21cr562-RC, ECF no. 107 at 22.

Mr. Martin was able to overcome adversity with the love of his family. According to him, he was raised by the "most loving and caring parents in the world." PSR 54. His father has been a minister for nearly 50 years. PSR 53; Exh. A at 14. His mother's work ethic is what drove their family's real estate company to what it is today -- 105 agents and seven employees. PSR 53; Exh. A at 2. She writes, "I am a worker. I believe that work gives a person purpose and that we should use our gifts, skills, talents, and tools for the benefit or our families and communities." Exh. A at 2. Mr. Martin's family is massive and unified. For example, Mr. Martin's 93-year-old maternal grandmother has 12 grandchildren, 29 great grandchildren, and great grandchildren all living in the Fresno area. *Id*. at 29-30. They were raised to love Jesus and the United States. *Id*. at 30. When Mr. Martin struggled in school, people like his sister helped him with eye exercises. *Id*. at 20. His parents used cognitive behavioral techniques to help him in the home and school. *Id*. at 14. And his family welcomed others who had no family into their homes. *Id*. at 2. The family motto is "there is always room for one more." *Id*. Mr. Martin's older brother (Jared) writes, "I think describing our early life as growing up in the lower middle class is generous. Saying that, we are relationship billionaires." *Id*. at 30. Mr. Martin's family and their values are significant reasons why he was able to graduate from college and obtain his real estate broker's license. *See* PSR 74, 80.

---

[3] Mr. Martin's District of Columbia case. All references to the District of Columbia PSR will first refer to the case number and then the proper ECF entry.

Mr. Martin has practiced unconditional love throughout his adult life, especially when it comes to his family. If there is one letter for the Court to read, it is that written by Mr. Martin's oldest son, Brennan. *Id*. at 4-8. Mr. Martin fought for years to reunite with Brennan after he was adopted without Mr. Martin's consent. *Id*.; PSR 60. Brennan writes, "[M]y father has consistently shown up all throughout my life. My dad taught me how to love myself and others through amazing words and acts of kindness, and has been one of the main contributors to my success in life." *Id*. at 4. Emma, Mr. Martin's daughter, describes Mr. Martin as her "best friend." Id. at 9. He supported her through suicidal periods and the shame that she felt for her sexual identity, amongst other things, by teaching her the power of affirmations to boost her self-confidence. *Id*. Despite coming from a very religious family, he accepted her and her female partners in their home. *Id*. Mr. Gray's daughter, K.G., describes Mr. Martin as "the kindest, most caring, and compassionate person I have ever met…[h]e has always been my biggest supporter." *Id*. at 13. He attends her meets, academic assemblies, and listens to her talk for hours. *Id*. Mr. Martin cares for his 93-year-old grandmother when his parents go out of town. *Id*. at 19. He prepares her meals/vitamins and sits with her to talk. *Id*. Leslie Maldonado, Mr. Martin's younger cousin, explains in detail how Mr. Martin took his time to show her that she was loved while she dealt with growing up in a broken home. *Id*. at 22. He was the first person that called her to offer his support when she became pregnant out of wedlock at 21 years old. *Id*. The voicemail is still on her phone today. *Id*.

Mr. Martin's care for others extends far beyond his family. As a youth, he defended other students that were bullied in school. *Id*. at 18. He befriended his neighbors, including an older Armenian man with whom he shared a bond over magnets. *Id*. at 2. Mr. Martin convinced his mother to buy a less fortunate family a Christmas tree and gifts when he was in junior high school, even when his own family struggled with the basics. *Id*. Emma's friend, Ciena, describes Mr. Martin as a father figure. *Id*. at 24. He helps with his elderly neighbors and drops off eggs and vegetables to another neighbor, Mr. Bennett. *Id*. at 26, 39.  He was previously on the board of the Fresno chapter of the Make-a-Wish Foundation. PSR 63.

   Mr. Martin has strived to be a leader and uplift people at work. He helped Kaylee Schwemley and others reach their full potential at Keller Williams. *Id*. at 33. He met with 20-25 agents daily to hone their work skills. *Id*. He started an internship program for high school students interested in real estate. *Id*. Gene O'Brien writes, " [M]y son trained with Ben while Ben was growing his team and to this day my son always says Ben Martin worked so hard to make sure he did the job to the best of his ability…Out of all the agents I worked with in my 28 years of lending, none focused on their fiduciary responsibilities to Buyers and Sellers like Ben Martin and his family." *Id*. at 34.

   Mr. Martin's world came crashing down due to his political protests related to COVID, his participation in the January 6, 2021 events at the Capitol Building, and the seizure of the guns in the instant case. Mr. Martin went from regularly being in the top 1-2% of real estate brokers in the Fresno area to last selling real estate in 2021. PSR 22, 80; *see also* Exh A. at 33-34, 36 (discussing Mr. Martin's acumen and leadership for real estate). His family's business suffered tremendously from cancel culture for Mr. Martin's political beliefs/organizing and they eventually asked him to leave Keller Williams. *See e.g.,* Exh. A. at 15. He has been unable to get hired by another brokerage and customers do not want to list with him for fear of being targeted. PSR 22. Attorney Shannon B. Jones[4] represented Mr. Martin before the California Department of Real Estate in 2019 wherein he admitted to failing to report his 2019 domestic violence conviction. She has represented real estate agents and brokerages for 34 years. She has represented close to 80,000 agents in her lifetime. Defense counsel spoke with her, and she said that based upon what she knows about Mr. Martin's current federal criminal cases, she believes that it is "highly unlikely" that he will be able to keep his broker's license.

   Mr. Martin is fighting to preserve just like he always has. He describes the court proceedings since his 2021 arrest as "the most humbling experience I have ever gone through." PSR 21. He wants to live a more private life. PSR 64. He has "mellowed," become softer, and matured. Exh. A. at 22. He is retrospective and focused on rebuilding economically to support

---

[4] http://calrealestatelaw.com/Shannon-B-Jones (accessed November 20, 2024).

his family. *Id*. at 26. To that end, Mr. Martin had the idea for a small family business growing microgreens and gourmet mushrooms. *See e.g., id*. at 8; PSR 78. Lovely Grown Farms[5] was started in roughly June 2023 and provides its produce to many of the local restaurants. PSR 78; Exh. A at 3. Mr. Martin is the farmhand and sole employee of the business. He grows, packages and sells the produce. He manages relationships with suppliers, vendors and customers. He is responsible for bills receivable and payable. He devotes 40+ hours per week, seven days per week to the business. He is training his son to take over his role for when he goes into custody. *See* Exh. A at 8 (Brennan describing working with father on farm). Many of the letter writers share the sentiments of Mr. Martin's neighbor, Allen Bennet, when he says "I believe he [Mr. Martin] understands the need to move forward with his life and hopes to become a better person when all this is behind him. In my opinion, Ben is an asset to our community and to our neighborhood as well as to his family. The sooner he can return to them and move on with his life the better we will all be." *Id*. at 27.

### III.

**A BELOW GUIDELINES SENTENCE IS SUFFICIENT BUT NOT GREATER THAN NECESSARY TO REFLECT THE SERIOUSNESS OF THE OFFENSE, PROMOTE RESPECT FOR THE LAW, AND JUSTLY PUNISH; ADEQUATELY DETER MR. MARTIN; AND IT WILL PROTECT THE PUBLIC BECAUSE MR. MARTIN DOES NOT POSE THE SAME THREAT TO SOCIETY AS OTHER §922 DEFENDANTS.**

Mr. Martin's criminal history is nowhere near the typical §922 defendant in this District. He has never possessed guns while selling drugs nor while committing a crime of violence. *See general PSR*. He does not have drug trafficking priors. *Id*. He does not have felony priors. *Id*. His only violent prior convictions are misdemeanors for which he served a total of 1 day of jail. PSR 41-42. He had spent a total of two days total in jail prior to the instant arrest. PSR 40,42.

Mr. Martin is not a dangerous domestic terrorist. He went to the District of Columbia unarmed and in street clothes. *See generally*, 1:21cr562-RC, ECF no. 1 (Complaint). Unlike some others, he did not possess a gas mask, chemical irritants, or military grade equipment. *Id*.

---

[5] https://lovelygrown.com/home (accessed November 20, 2024).

He is not accused of committing any violence while there. *Id*. The most egregious conduct that Mr. Martin committed while at the Capitol Building was holding a door open for approximately 30 seconds while officers tried to close it.

Mr. Martin has rehabilitated himself since committing domestic violence in 2017. First, he completed a 52-week batterer's treatment program. *See* PSR 42. Second, he enjoys the full support of his fiancé, Ms. Gray, with whom he has been with for seven years. *Id*. at 11. She describes Mr. Martin as loving, a devoted father, and someone who has brought her "immense peace." *Id*. She writes, "It has been incredibly painful to hear news articles and media outlets portray the man I know so intimately as a villain—someone violent and hateful. That is not the Ben that I know." *Id*. Third, Mr. Martin has never been alleged to have committed domestic violence while armed. Fourth, he has not violated any restraining orders. The case agent contacted the 2017 victim as part of the investigation in this case, and she did not report any contact made by Mr. Martin after the prior conviction. The restraining order filed by Mr. Martin's sister has been dissolved and he followed its terms. *Id*. at 21. Most importantly, Mr. Martin is not alleged to have committed violence in over seven years. *See generally PSR*.

Mr. Martin has never used firearms in a dangerous manner. Agents stumbled across the firearms in the instant case by complete accident. They were executing a search warrant for the District of Columbia case and were searching for other items – namely clothing and electronics tied to Mr. Martin's use of a cell phone while at the Capitol Building. For this reason, they had to obtain a second search warrant to seize the firearms in question. The firearms seized were securely stored in a locked safe.

In addition to the (a)(2) factors, section 3553(a)(6) requires the Court to also consider the need to avoid unwarranted sentencing disparities among defendants with similar records and guilty of similar conduct. For all the reasons above, neither Mr. Martin's record nor his conduct is similar to other § 922 defendants.

//

//

## IV.

## **THE COURT SHOULD CONSIDER THE COLLATERAL CONSEQUNCES SUFFERED BY MR. MARTIN IN DETERMINING WHAT IS JUST PUNISHMENT.**

Professor Michelle Alexander has explained, "[m]yriad laws, rules, and regulations operate to discriminate against ex-offenders and effectively prevent their reintegration into the mainstream society and economy. These restrictions amount to a form of 'civi[l] death' and send the unequivocal message that they are no longer part of us." Michelle Alexander, *The New Jim Crow* at 142 (2010). Mr. Martin has all but lost his ability to practice as a real estate broker with over two decades of experience. He has gone from being a top real estate agent to someone working for room and board as a microgreens farmer. PSR 22, 78. Ms. Jones confirms that it will be "highly unlikely" that Mr. Martin will keep his real estate license. Additionally, Mr. Martin and Ms. Gray have lost family and friends. Ms. Gray writes, "I pray that, when considering sentencing, you take into account the immense price already paid – the social death he has endured."

## V.

## **MR. MARTIN'S CONDUCT ON BOND SUPPORTS A BELOW GUIDELINES SENTENCE.**

Mr. Martin has been fully compliant throughout the three-year period that he has been on pre-trial release. PSR 4. His conduct on bond shows that a lesser sentence is sufficient to promote respect for the law, adequately deter, and protect the public.

## VI.

## **MR. MARTIN REQUESTS A SELF SURRENDER DATE OF JANUARY 31, 2025.**

For all the reasons argued at ECF no. 114 (Opp. to Govt. Mot. For Remand), the Court should give Mr. Martin a self-surrender date. Defense counsel reached out to Pretrial Services Officer Guerrero and as of Monday, November 18, 2024, he confirmed that Mr. Martin continues to comply with supervision. Officer Guerrero does not object to a self-surrender date. Furthermore, Mr. Martin is scheduled to be sentenced in the District of Columbia on December

20, 2024. He fully intends to attend sentencing -- Mr. Martin, Ms. Gray, and Mr. Martin's father have already purchased their flights and lodging. See Exh. B, *Receipts*. Finally, he respectfully asks the Court for the opportunity to spend the holidays with his family and to wrap-up his affairs before serving time in prison.

## VII.
## CONCLUSION

For the forgoing reason, the Court should sentence Mr. Martin to 18 months of custody.

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

Date: November 20, 2024

*/s/ Hootan Baigmohammadi*
HOOTAN BAIGMOHAMMADI
Assistant Federal Defender
Attorneys for Defendant
Mr. Martin